Filed 2/10/15  P. v. Cavness CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL CAVNESS,<br><br>    Defendant and Appellant. | A137912<br><br>(San Francisco County<br>Super. Ct.  No. 211241)<br><br>**ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT]** |

**BY THE COURT**:

The petition for rehearing filed on January 20, 2015 is denied.

The opinion filed on January 13, 2015 is modified as follows:

(1)  On page 1 of the opinion, after the first two sentences of the first paragraph, delete the remainder of the paragraph and replace it with the following:

Defendant argues his involuntary manslaughter conviction must be reversed for instructional error and insufficient evidence.  We conclude the trial court committed prejudicial instructional error, but that substantial evidence supports this conviction.  Therefore, we reverse the conviction and remand for a new trial on the involuntary manslaughter charge.  Defendant further contends there was insufficient evidence to support his 25 years to life sentence under the Three Strikes Law for assault with a deadly

weapon. We agree and vacate this sentence. We remand this matter to the trial court for resentencing as well.

(2) On page 3, delete the last three sentences of the second full paragraph, which paragraph begins with "It also was not disputed . . . ." Insert the following after this paragraph:

Defendant testified that Edward punched him first in the head and that he, defendant, hit Edward back. Edward fell backwards onto the pavement, knocked out. Defendant said he slapped Edward in the face a bit, trying to wake him up, and then left the area because he wanted to catch another visitor to the garage, a woman named Pearl, so that she would explain to his mother and the police what happened.

Defendant and Edward's mother, Katherine Cavness, testified that she heard defendant telling Edward to get out of the garage. She went downstairs and saw Edward ball up his fists and not leave, and that defendant's fists were not balled up. She saw Edward hit defendant, and defendant then hit Edward. Edward fell backward, appeared to strike his head on the pavement, and did not get up. On cross-examination, she acknowledged that she was not sure who hit whom first.

Another witness, Amy Craven, testified that she observed the scene as she sat in a truck parked "catty-corner" on the other side of the street. She saw defendant outside the garage arguing "nose to nose" with a "tall, thin gentleman" who, the evidence indicates, was Edward. The two were "angry and agitated and aggravated at one another." Craven saw Edward put both his hands up, palms open, and lean backwards. Defendant punched him in his face, near the left temple area just above his ear. Craven thought "the punch caught [Edward] off guard and off kilter, and he fell directly backwards," hitting his head on the curb. She previously had told police that the two " 'started swinging punches at one another,' " but said at trial that she did not know if Edward swung at defendant. Taylor testified that he heard Edward say, " 'If you hit me again, you're going to kill me.' "

Craven further testified that Edward made no effort to break his fall. Defendant "got on top of him and wanted to start to, like, w[h]ale on him some more." She saw

2

defendant "pounding [Edward's] head into the sidewalk some more." She previously had said that defendant "slapped" Edward's face. Craven got out of the truck and screamed at defendant, who ran away.

The parties disputed whether Edward smoked crack cocaine with his brother that morning. Pearl testified that everyone present, which included defendant and Edward, were "smoking drugs." Defendant testified that Edward came down to the garage later in the morning, shortly before their fight, and told him their mother was coming downstairs. Defendant also testified that Edward had "been drinking" that day.

(3) On page 4, delete the heading, "***The Court Committed Prejudicial Error In Instructing The Jury Regarding Involuntary Manslaughter***" and replace it with the heading, "***Defendant's Involuntary Manslaughter Conviction***". Delete the first paragraph underneath this heading and replace it with the following:

Defendant argues that his conviction for the involuntary manslaughter of Edward must be reversed for instructional error and insufficient evidence. We conclude that the court committed instructional error, but that the evidence was sufficient to convict him of involuntary manslaughter.

(4) On page 4, in the second full paragraph, after "998, 1006" add "(*Butler*)". After "670-676" delete "; *People v. Butler*," and replace it with " (*Cox*); *Butler*,".

(5) On page 5, delete the heading, "***The Prosecution's Theory And The Trial Court's Instructions***" and replace it with "***The Court Committed Prejudicial Error In Instructing The Jury Regarding Involuntary Manslaughter***." Insert the following as the first paragraph beneath this heading:

Defendant argues the trial court prejudicially erred when it instructed the jury about involuntary manslaughter pursuant to CALCRIM No. 581 without including the definition for "criminal negligence" contained in that standard instruction. The People concede the court's error, but argue that it was not prejudicial. We agree with defendant.

(6) On page 5, in the last line of the body of the page, delete "*People v. Cox* (2000) 23 Cal.4th 665," and replace it with "*Cox*, *supra*, 23 Cal.4th at p.".

(7) On page 7, delete "**C. *Analysis***".

3

(8)  On page 8, in the first full paragraph, beginning with "But the difference . . .", delete the word "Defendant" in the beginning of the second sentence and replace it with, "Regardless of whether or not substantial evidence supported defendant's involuntary manslaughter conviction—an issue we address below—defendant".

(9)  On page 8, in footnote 6, in the first sentence, delete "one witness's" and replace it with "Craven's".

(10)  On page 9, after the first full paragraph that begins with "In short . . .", insert the following:

**C. *Sufficient Evidence Supports Defendant's Involuntary Manslaughter Conviction.***

Defendant also argues there was insufficient evidence that he acted with "criminal negligence" or that his conduct was the proximate cause of Edward's death.  If this is the case, the constitutional protection against double jeopardy would prohibit the People from trying him again for the involuntary manslaughter of Edward.  (*People v. Anderson* (2009) 47 Cal.4th 92, 104.)  We conclude that, regardless of the trial court's instructional error or the jury's verdicts, sufficient evidence supports his involuntary manslaughter conviction.  Therefore, we remand this matter for a new trial on the involuntary manslaughter charge.

"To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we

4

look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

With these standards in mind, we turn to defendant's arguments.

**1.** ***Criminal Negligence***

The jury convicted defendant of involuntary manslaughter of Edward based on his commission of a misdemeanor offense, battery. Therefore, in evaluating defendant's "criminal negligence" claim, we determine whether there is substantial evidence that this battery "was dangerous to human life or safety under the circumstances of its commission." (*Cox*, *supra*, 23 Cal.4th at p. 675.)

Defendant argues, "[t]he evidence offered here of a single swing, without other endangering circumstances, comes nowhere near the requisite level of substantial proof to establish criminal negligence – a high risk of death or great bodily injury . . . ." The People argue the present circumstances are similar to those discussed in *People v. Cravens* (2012) 53 Cal.4th 500 (*Cravens*). There, our Supreme Court concluded that the totality of the circumstances indicated that a defendant acted with implied malice— necessary to convict him of second degree murder—when he threw a single punch to the head of the victim. We agree with the People that the analysis in *Cravens* is particularly relevant here.

In *Cravens*, four men, former football teammates, confronted another man, a professional surfer named Kauanui, outside his home. (*Cravens*, *supra*, 53 Cal.4th at p. 502-504.) Substantial evidence indicated the four attacked Kauanui and one of them— not the defendant—eventually straddled and punched the defenseless surfer with both fists. (*Id*. at p. 504.) During a lull in the fighting, Kauanui stood up and walked unsteadily. (*Id*. at p. 505.) When he asked the defendant a non-threatening question, the defendant " 'came flying out' and 'coldcocked' " Kauanui with an " 'extremely hard' " punch as defendant stood on a curb striking down at Kauanui, who was standing at street level. (*Ibid*.) Witnesses thought Kauanui was unconscious from the blow before he hit

5

the ground.  (*Ibid*.)  Kauanui's skull hit the ground loudly, leading to a brain injury and his death a few days later.  (*Ibid*.)  The defendant left the scene and later bragged about the punch.  (*Id*. at p. 506.)

The *Cravens* court reviewed whether sufficient evidence satisfied both the physical and mental components of implied malice.  The first, which is similar to the "high risk of death or great bodily injury" element defendant raises here, requires that the " ' " 'natural consequences' " ' " of the act performed be " ' " 'dangerous to life. ' " ' "  (*Cravens*, *supra*, 53 Cal.4th at p. 508.)  The court found substantial evidence met this element.  Among other things, it indicated defendant, the larger man, struck a victim who was in a physically vulnerable position with a punch "hard enough to knock Kauanui unconscious . . . even before he hit the ground," regardless of the absence of facial markings on Kauanui from the blow.  (*Id*. at p. 509.)  Also, the defendant's conduct in delivering the blow "guaranteed that Kauanui would fall on a very hard surface, such as the pavement or the concrete curb.  'The consequences which would follow a fall upon a concrete walk must have been known to [defendant.]' "  (*Ibid*.)  The court continued, "Perhaps worst of all, defendant decked Kauanui with a sucker punch.  The jury could reasonably have found that at the time defendant attacked, Kauanui posed no threat and was not behaving in an aggressive manner" and "intended to catch Kauanui at his most vulnerable."  (*Ibid*.)

The *Cravens* court "categorically reject[ed] defendant's blithe assertion that the 'natural consequence' of his conduct was merely 'a sore jaw' " and concluded the record belied the assumption that the "punch was at all ordinary."  (*Cravens*, *supra*, 53 Cal.4th at pp. 510, 511.)  Rather, the court concluded, "it was an extremely powerful blow to the head calculated to catch the impaired victim off guard, without any opportunity for the victim to protect his head, and thereby deliver the victim directly and rapidly at his most vulnerable to a most unforgiving surface."  (*Id*. at p. 511.)

This conclusion applies with equal force here.  The aggravated circumstances involved here are somewhat different from those in *Cravens*.  Edward was not attacked prior to defendant's punch, nor does the record indicate that defendant was significantly

larger than Edward or punched him from a physically advantageous position. Nonetheless, the *Cravens* court focused on the circumstances surrounding the defendant's single blow to Kauanui's head. We do so here as well. Substantial evidence indicates that defendant "sucker punched" an intoxicated Edward in the head as Edward put his hands up, palms out, and moved backward in a defenseless position, and that defendant did so with a punch so hard that it knocked Edward unconsciousness immediately, before he hit the hard pavement. As indicated in *Cravens*, a jury could reasonably reach this conclusion whether or not the medical examiner considered the punch to be of "severe" force and regardless of the markings on Edward's face from the blow. Further, Taylor testified that Edward warned defendant that if defendant punched him again, it would kill him, and defendant fled the scene and later bragged to a cousin that he knocked Edward out cold with one punch. It can be reasonably inferred from this evidence that defendant understood his punch could seriously injure Edward. Based on these circumstances, a jury could reasonably conclude that defendant's act was a reckless one that created a high risk of death or great bodily injury.

Defendant's arguments are similar to those made by the defendant in *Cravens*. He argues that "[f]ist fights break out daily in our society, yet no reasonable person expects that a single closed fist punch to the jaw is likely to create a high risk of death," and he quotes the prosecutor's reference to the event as a "tragic accident" as further proof of its ordinary nature. He also correctly points out that, regarding second degree murder, " 'if the blows causing death are inflicted with the fist, and there are no aggravating circumstances, the law will not raise the implication of malice . . . .' " (*Cravens*, *supra*, 53 Cal.4th at p. 508.) He contends that the jury's acquittal of him on the charge of assault by means of force likely to cause great bodily injury demonstrates that there were no "aggravated circumstances here," and contends that the "necessary level of negligence is well exemplified" by the 15-minute physical attack described in *Butler*, *supra*, 187 Cal.App.4th at pp.1003-1004. There, the appellate court rejected a defendant's contention that there was insufficient evidence to support his involuntary manslaughter conviction because substantial evidence indicated he participated with others in the

7

prolonged physical abuse of the victim, thereby substantially contributing to the victim's death.  (*Id*. at pp. 1010-1012.)

We disagree with defendant's arguments.  Nothing in *Butler* precludes us from finding aggravated circumstances existed here or that substantial evidence supports defendant's conviction whatever may be deduced from the jury's verdicts.  More importantly, defendant's analysis ignores the substantial evidence of aggravated circumstances that we have discussed, and that the legal standard for "criminal negligence" includes not only the high risk of death, but also the high risk of "great bodily injury."  Although the jury that heard this case apparently did not so find, a jury reasonably could find such a risk based on substantial evidence.

### 2. *Proximate Cause*

Defendant next argues that there was not substantial evidence that his battery of Edward was the proximate cause of Edward's death.  Again, we disagree.

"Involuntary manslaughter . . . requires a showing that the defendant's conduct proximately caused the victim's death."  (*Butler*, *supra*, 187 Cal.App.4th at p. 1009.)  There may be concurrent causes of death, i.e., more than one cause that is " ' " 'operative at the time of the death and acted with another cause to produce the death.' " ' "  (*Ibid*.)  In such a circumstances, defendant's conduct need only be "a substantial factor in causing the death."  (*Ibid*.)  "Further, proximate causation requires that the death was a reasonably foreseeable, natural and probable consequence of the defendant's act, rather than a remote consequence that is so insignificant or theoretical that it cannot properly be regarded as a substantial factor in bringing about the death."  (*Id*. at pp. 1009-1010.)

Defendant argues that Edward's death was not a reasonably foreseeable result of his single punch, but could only "be revealed through hindsight."  This is based on his continued assertion that he committed a simple battery under ordinary, rather than dangerous, circumstances, as indicated by the jury's acquittal of him on the charge of assault by force likely to produce great bodily injury.  We disagree.  As we have discussed, there is substantial evidence of aggravated circumstances here similar to those discussed in *Cravens*.  Notably, the *Cravens* court also concluded that the jury there

8

could reasonably infer the defendant was subjectively aware that his conduct endangered Kauanui's life from the circumstances of the attack alone, "*the natural consequences of which were dangerous to human life*." (*Cravens*, *supra*, 53 Cal.4th at p. 511, italics added.) Here, substantial evidence indicates that defendant struck Edward so hard as to knock him immediately unconscious and send him falling senseless to the hard pavement. It takes no hindsight to realize such a blow could cause Edward to crack his unprotected head on the pavement and suffer a fatal injury. Although Edward's death resulted from his head hitting the pavement rather than as a direct result of defendant's punch, defendant's act was a substantial factor in causing Edward's death. Further, there was substantial evidence to support a finding that Edward's death was a reasonably foreseeable, natural and probable consequence of defendant's hard blow to the defenseless and intoxicated Edward as they stood on the sidewalk. Defendant's "proximate cause" argument lacks merit.

(11) On page 14, in the first full paragraph, delete ", including defendants' contention that the People did not present evidence sufficient to meet certain other elements of involuntary manslaughter." Replace it with a period directly after "arguments".

There is no change in judgment.

Dated:_____          _____
                                                    Kline, P.J.

9

Filed 1/13/15  P. v. Cavness CA1/2 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.  z

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL CAVNESS,<br><br>        Defendant and Appellant. | A137912<br><br>(San Francisco County<br>Super. Ct.  No. 211241) |

Defendant Michael Cavness appeals from his conviction after jury trial on several criminal counts and related enhancement allegations.  Among other things, he was sentenced to eight years for involuntary manslaughter and to a base term of 25 years to life under the Three Strikes Law for assault with a deadly weapon, upon which 13 years were added for certain enhancement allegations.  Defendant argues the trial court committed prejudicial instructional error regarding his involuntary manslaughter charge, requiring reversal.  He further contends there was insufficient evidence to support his 25 years-to-life sentence under the Three Strikes Law for assault with a deadly weapon. We agree in both respects.  Therefore, we reverse defendant's involuntary manslaughter conviction, vacate his 25-years-to-life sentence, and remand this matter to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

### *Procedural History*

In January 2010, the San Francisco District Attorney charged defendant in an information with four criminal counts related to events that occurred on April 2, 2009.

Defendant was alleged to have assaulted George Michael Taylor with a deadly weapon, an iron bar (Pen. Code, § 245, subd. (a)(1)),[1] and to have personally inflicted great bodily injury (§ 12022.7, subd. (a)) in doing so (count one); to have committed the involuntary manslaughter (§ 192, subd. (b)) of his brother Edward Cavness (Edward),[2] as the proximate result of committing assault with a force likely to produce great bodily injury (§ 245, subd. (a)(1)) (count two); to have assaulted Edward with force likely to cause great bodily injury (§ 245, subd. (a)(1)) (count three); and to have been in possession of a controlled substance, cocaine base (Health & Saf. Code, § 11350, subd. (a)) (count four). The sentence enhancement allegations included that defendant had two prior "strike" convictions. This required that he be sentenced to an indeterminate life term under the "Three Strikes Law."[3]  (§ 667.)

Defendant pled not guilty to all allegations and a jury trial followed. The jury found him guilty of counts one, two, and four, and guilty of a lesser offense, "simple assault" (§ 240), in count three. It also found a sentence enhancement allegation contained in count one to be true. The court subsequently held a bench trial regarding the prior conviction allegations. Among other things, it found to be true the allegations that defendant had two prior "strike" convictions.

Accordingly, in February 2013, the trial court sentenced defendant on count one, the assault of Taylor with a deadly weapon, to a base term of 25 years to life pursuant to the Three Strikes Law, with 13 additional years added under the other applicable enhancement allegations; on count two, involuntary manslaughter, to a total of eight years including a sentencing enhancement; on count three, simple assault, to one year in county jail; and on count four, to eight months in county jail. The court ordered that the

---

[1]  All of our statutory references are to the Penal Code.

[2]  We refer to Edward by his first name for clarity's sake, and mean no disrespect in doing so. We also recognize that the parties refer to him as "Bernard."

[3]  The Three Strikes Law is codified at section 667, subdivisions (b) through (i) and Penal Code section 1170.12, subdivisions (a) through (d). (*People v. Sosa* (2013) 210 Cal.App.4th 946, 948.)

sentences run consecutively and stayed the sentences for counts three and four. Defendant filed a timely notice of appeal.

### *Evidence Presented At Trial*

At trial, it was not disputed that on the morning of April 2, 2009, defendant and Taylor smoked crack cocaine in defendant's makeshift home, located in the garage of a house he shared with his mother and other family in San Francisco, California. Defendant became agitated after Taylor refused to leave the garage and hit him in the head with an iron bar, dazing Taylor and causing him to bleed profusely. Taylor testified that defendant was standing behind him as he, Taylor, was engaged in a drug transaction with a visitor to the garage. Taylor next remembered waking up on the ground outside the garage, his head bleeding profusely. Defendant testified that he hit Taylor once with the bar in self-defense after Taylor tried to stab him with a sharp metal object. Taylor was treated at a hospital and released the next day.

It also was not disputed that a few moments after defendant hit Taylor, defendant and Edward were standing on the sidewalk outside the garage. Defendant punched Edward in the jaw, knocking him unconscious and causing him to fall backwards. Edward's head hit the sidewalk and his skull fractured, leading to his death. Defendant testified that Edward punched him first in the head. The parties disputed whether Edward did so based on different eyewitness accounts. They also disputed whether Edward also smoked crack cocaine with his brother that morning.

A medical examiner for the San Francisco Police Department testified that, along with Edward's skull fracture, there was a sutured area inside his lip and a red abrasion on his jaw that were consistent with blunt force trauma. The blow to the back of Edward's head was of a "severe" force, but the punch to the jaw was not. Alcohol and a metabolite of cocaine were found in Edward's blood. It could not be determined when he used the cocaine.

Defendant was arrested a few blocks away from his home on the afternoon of the incident. He was carrying .97 grams of cocaine base in a cigarette container. After his arrest, he called a cousin from jail. The call was recorded and played for the jury.

3

Defendant told his cousin about Taylor and Edward, "I had to break [Taylor] and [Edward] ass off." He went on to say, "What, what's up with [Taylor], man? Cause I clubbed his ass a bunch of times." He also said, "I hit [Edward] in his jaw one time. Nigger was out cold[,]" as well as "[Edward] hit me on the side [of] the head after I was fighting [Taylor]. He jump in on [Taylor's] side."

## DISCUSSION

### I. *The Court Committed Prejudicial Error In Instructing The Jury Regarding Involuntary Manslaughter.*

Defendant argues the trial court prejudicially erred when it instructed the jury about involuntary manslaughter pursuant to CALCRIM No. 581 without including the definition for "criminal negligence" contained in that standard instruction. The People concede the court's error, but argue that it was not prejudicial. We agree with defendant.

### A. *The Elements Of Involuntary Manslaughter*

Section 192 defines involuntary manslaughter as "the unlawful killing of a human being without malice" either (a) "in the commission of an unlawful act, not amounting to felony" (i.e., a misdemeanor); or (b) "in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." "Through statutory definition and judicial development, there are three types of acts that can underlie commission of involuntary manslaughter: a misdemeanor, a lawful act, or a noninherently dangerous felony." (*People v. Butler* (2010) 187 Cal.App.4th 998, 1006.) The defendant's act must proximately cause the death (*id.* at p. 1009) and be committed with criminal intent that is at least criminal negligence. (*People v. Stuart* (1956) 47 Cal.2d 167, 173-174, explained by *People v. Cox* (2000) 23 Cal.4th 665, 670-676; *People v. Butler*, *supra*, at p.1006 ["for all three types of predicate acts the required mens rea is criminal negligence"].)

4

**B.** *The Prosecution's Theory And The Trial Court's Instructions*

The prosecution argued, and the trial court instructed the jury, on two alternative predicate acts as the basis for the involuntary manslaughter charge: battery in violation of section 242 or assault with force likely to cause injury in violation of section 245, subdivision (a).[4] The court correctly instructed the jury using a modified version of CALCRIM No. 581 that the People had to prove one of those crimes, that the defendant had to have committed the crime with criminal negligence, and that the crime had to have caused the death. The instruction addressed the causation element, but failed to define or further discuss the criminal negligence mens rea requirement.

The court made this omission although "criminal negligence" is defined in the standard CALCRIM No. 581 instruction. This definition indicates that the People are required to show that a defendant acted in a "reckless" way, thereby creating a "high risk of death or great bodily injury," and that a reasonable person would have known that acting in this way would have created such a risk.[5]

This definition for "criminal negligence" is consistent with our Supreme Court's determination that "misdemeanor assault and battery *may* support a conviction of involuntary manslaughter under section 192[, subdivision] (b) if shown to be dangerous under the circumstances of their commission." (*People v. Cox* (2000) 23 Cal.4th 665,

---

[4] The court's instruction omitted the word "great" from the description of the stated assault offense. However, both the court's accompanying assault instruction and the jury's verdict form for count two referred to force likely to cause "*great* bodily injury." (Italics added.) In any event, as we will discuss, the jury did not rely on this assault allegation for its involuntary manslaughter guilty verdict.

[5] The standard definition for "criminal negligence" contained in CALCRIM No. 581 states in full: "*Criminal negligence* involves more than ordinary carelessness, inattention, or mistake in judgment. A person acts with criminal negligence when: [¶] 1. He or she acts in a reckless way that creates a high risk of death or great bodily injury; [¶] AND [¶] 2. A reasonable person would have known that acting in that way would create such a risk. [¶] In other words, a person acts with criminal negligence when the way he or she acts is so different from the way an ordinarily careful person would act in the same situation that his or her act amounts to disregard for human life or indifference to the consequences of that act."

5

674.) "Where involuntary manslaughter is predicated on an unlawful act constituting a misdemeanor, it must still be shown that such misdemeanor was dangerous to human life or safety under the circumstances of its commission." (*Id*. at p. 675.) A battery under section 242, which, as we will discuss, the jury relied upon as the predicate unlawful act, is a misdemeanor offense. (See, e.g., *People v. Merriman* (2014) 60 Cal.4th 1, 30.)

The court's omission was particularly significant because the parties did not discuss the "criminal negligence" element of involuntary manslaughter in closing argument. Indeed, their arguments suggested the jury could find defendant guilty of the crime without finding that defendant acted in a reckless way that created a high risk of death or great bodily injury. The prosecutor argued the jury could convict if it found "that there was a crime, a battery or an assault likely to cause great bodily injury, which was the substantial cause of [Edward's] death . . . [t]hat [defendant] hit, in an offensive touching, [Edward] in the jaw. He fell to the ground and he struck his head." Similarly, defense counsel told the jury that involuntary manslaughter required "the commission of an unlawful act that does not amount to a felony, such as a punch, which sets those wheels in motion, it resulted in the death of a human being. . . . Again, the commission of an unlawful act not amounting to a felony that results in the death of a human being, involuntary manslaughter."

Indeed, defense counsel suggested to the jury that it need not consider whether Edward's death was even foreseeable to defendant, although another requirement of "criminal negligence" is that a reasonable person *would have known* that acting in the way charged would create a high risk of death or great bodily injury. (CALCRIM No. 581.) He said defendant had been charged with involuntary manslaughter, rather than murder, because "it is *not reasonably foreseeable* that this kind of thing would happen from a punch." (Italics added.) His statement was directly inconsistent with the standard definition of "criminal negligence" contained in CALCRIM No. 581.

During its deliberations, the jury asked the court whether "simple assault," which it was instructed was a possible lesser offense for count three, was the "same" as "battery" and could therefore "cover" the unlawful act required for a finding that

defendant committed involuntary manslaughter. The court, after conferring with counsel and without objection from the defense, responded that "[s]imple battery is not the same as simple assault. However, simple assault can be the underlying non-felonious conduct of involuntary manslaughter *if* all the other elements have been proven. The simple assault and the other elements must be proven beyond a reasonable doubt. If you find that simple assault is the underlying unlawful act not amounting to a felony in count [two], please indicate it on the verdict form."

The jury found defendant guilty of involuntary manslaughter. It did not designate "simple assault" as the unlawful act on its verdict form. It also did not indicate whether "assault with force likely to produce great bodily injury" or "battery," both of which were on the form, was the unlawful act. However, in count three, it found defendant was not guilty of "assault with force likely to cause great bodily injury" but guilty of the lesser included offense of "simple assault." The only logical conclusion that can be drawn from these verdicts is that the jury relied on battery as the predicate unlawful act in finding defendant guilty of involuntary manslaughter.

## C. *Analysis*

Defendant asserts we must analyze the trial court's error pursuant to the federal standard for prejudice, which requires that we determine whether or not the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) The People contend we should do so under the state standard, which requires that we determine whether or not it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Defendant is correct.

As this court stated in *People v. Hunter*, under the Fifth Amendment of the federal Constitution, "the prosecution must prove every element of a criminal offense beyond a reasonable doubt [citation], and the Sixth Amendment requires that determination to be made by the jury, not the court [citation]. Consequently, an instruction lightening the prosecution's burden of proof violates the accused's right to a jury trial. [Citations.]" (*People v. Hunter* (2011) 202 Cal.App.4th 261, 276.) These federal constitutional rights

7

are implicated here. Therefore, we must apply the federal prejudice standard and determine whether or not the court's instructional error was harmless beyond a reasonable doubt. (*Id*. at p. 278, citing *Chapman v. California*, *supra*, 386 U.S. at p. 24.)

But the difference is of no moment in this case because the court's error was prejudicial under either standard. Defendant almost certainly would have received a more favorable verdict regarding count two, involuntary manslaughter, if the court had instructed the jury on the definition of "criminal negligence." Regarding count three, the jury found defendant was *not* guilty of "assault with force likely to produce great bodily injury" and guilty only of the lesser offense of "simple assault." The jury thus declined to find that defendant's act of punching his brother involved force "likely to produce great bodily injury." This element of the more serious assault charge is very similar to the "criminal negligence" requirement that the relevant act create "a high risk of death or great bodily injury." (CALCRIM No. 581.) Counts two and three were based on the same act—defendant's attack of Edward.[6] It would not be rational for a jury to conclude that defendant did *not* act with force *likely* to produce great bodily injury, but did act recklessly so as to create a *high risk of death or* great bodily injury.

Nor did the jury's apparent finding that defendant committed battery affect our analysis. Regarding battery, the court instructed that the People were required to prove that defendant "willfully and unlawfully touched Edward Cavness in a harmful or offensive manner" and "did not act in self-defense." Nothing in this instruction required the jury to find defendant acted with force likely to produce great bodily injury, much less that his act created a high risk of death or great bodily injury.

---

[6] The People argue on appeal that the trial court's instructional error lacked prejudice because of the overwhelming evidence of defendant's guilt, including one witness's testimony that she saw defendant continue his assault on Edward after Edward fell. Defendant contends this evidence was discredited. It makes no difference to our analysis, however, because the jury considered this evidence in determining defendant's guilt for both counts two and three and still declined to find that defendant acted with force likely to produce great bodily injury.

In short, the court's failure to instruct the jury regarding the definition of "criminal negligence" was prejudicial: it relieved the prosecution of having to prove every element of the offense beyond a reasonable doubt and it is more than reasonably probable that, correctly instructed, the jury would have issued a verdict more favorable to defendant. Therefore, we reverse defendant's involuntary manslaughter conviction and remand this matter to the trial court for further proceedings consistent with this opinion.

## II.  *Defendant's Three Strikes Conviction*

Defendant also argues there was insufficient evidence to support the trial court's finding at its bench trial that he had suffered two prior "strike" convictions. Therefore, he contends, the court's imposition of his 25-years-to-life sentence for assaulting Taylor with a deadly weapon pursuant to the Three Strikes Law was in error and should be vacated. We agree, and remand this matter to the trial court for further proceedings consistent with this opinion.

### A.  *The Proceedings Below*

The People alleged in their information that defendant was previously convicted of two specific, serious felonies, each of which constituted a strike. At the bench trial, the People submitted documentary evidence in support of these allegations and the court found them to be true. Defendant challenges the sufficiency of the evidence regarding one of them.[7]

Specifically, the People alleged in their information that defendant was "convicted of the crime of ASSAULT WITH FORCE LIKELY TO CAUSE GREAT BODILY INJURY, violating section 245[, subdivision ](a)(1) of the Penal Code, a Felony, on or about the 24th day of May, 1994, in the Superior Court of California, County of San Francisco." At the bench trial, the People submitted documents into evidence to prove this allegation. These included reporter's transcripts of hearings in San Francisco Superior Court on May 3, 1994, and May 24, 1994. They show that defendant, in the

---

[7]  Defendant does not challenge the trial court's finding that defendant was convicted in 1999 of the crime of attempting to dissuade a witness (§ 136.1, subd. (a)(2)), as alleged by the People in their information.

9

same court proceeding, pled to, and was found guilty of, two separate charges in two separate cases pursuant to a negotiated disposition.

That is, on May 3, 1994, defendant pled to, and was found guilty of, assault with force likely to produce great bodily injury in case number 153902. The information filed against him in that case, also submitted into evidence at the bench trial, indicates this assault was against Kathryn Schneider. The record does not contain further information about the offense. Although the relevant count recited in the information in case number 153902 includes an enhancement allegation that defendant personally inflicted great bodily injury on Schneider, this allegation was dismissed as part of the negotiated disposition.

Also on May 3, 1994, defendant pled guilty to assault with a deadly weapon, a baseball bat, in case number 153932. The information filed against him in that case, also submitted into evidence at the bench trial, includes the allegation that he personally committed an assault with the bat upon Charles Cavness. The record does not contain further information about this offense either.

At the bench trial regarding defendant's prior convictions, neither party presented much argument. The prosecutor declined to make any detailed argument because "the exhibits speaks [*sic*] for themselves." He made no comment regarding the May 1994 proceedings other than in the course of addressing allegations of prior felonies with state prison terms that were made pursuant to Penal Code section 666.5, subdivision (b) (regarding determinate sentencing). He stated then that the documents showed "prison commitments as alleged for the 245 [,subdivision] (a)(1) as one strike; and 245 [,subdivision] (a)(1), nonstrike[.]" Defense counsel submitted on the matter without making any argument.

The trial court found that the People's Three Strikes allegation that defendant had been convicted of "assault with force likely to cause great bodily injury . . . on or about the 24th day of May 1994" to be true, without further elaboration. Neither the information, nor the court's finding, made any mention of the other conviction defendant suffered in May 1994, for assault of Charles Cavness with a deadly weapon.

10

**B.** *Analysis*

We review the trial court's findings to determine whether there is substantial evidence that the allegation has been proved beyond a reasonable doubt. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065, 1067 (*Delgado*).) In other words, "we examine the record in the light most favorable to the judgment . . . [to] determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt." (*Id*. at p. 1067.)

As defendant points out, in order for the court to sentence him pursuant to the Three Strikes Law under the circumstances of his case, it must be "pled and proved" that any prior strike conviction was for a "serious" or "violent" felony. (§ 667, subds. (c), (e)(2); § 1170.12, subd. (a).)

Defendant contends that his May 1994 conviction for "assault with force likely to produce great bodily injury" against Schneider in case number 153902 was neither a "serious" nor "violent" felony. This is correct. A "serious" or "violent" felony, when a weaponless assault against a non-accomplice is involved, must involve evidence that the defendant in fact personally inflicted great bodily injury on the victim. (§ 1192.7, subd. (c)(8); § 667.5, subd. (c)(8).) "[A]ssault merely by *means likely to produce* [great bodily injury], without the additional element of personal infliction, is not included in the list of serious felonies." (*Delgado*, *supra*, 43 Cal.4th at p. 1065.) Nothing in the record indicates that defendant's assault on Schneider involved his actual personal infliction of such an injury. To the contrary, an allegation that he did so accompanied this assault charge in case number 153902 and was dismissed as part of the negotiated disposition of the case.

A dismissed allegation alone is insufficient evidence that defendant's assault of Schneider involved the infliction of the requisite personal injury. "[I]f the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense. [Citations.] In such a case, if the statute under which the prior conviction occurred could be violated in a way that does

11

not qualify for the alleged enhancement, the evidence is thus insufficient, and the People have failed in their burden." (*Delgado*, *supra*, 43 Cal.4th at p. 1066.) Such is the case here.

On appeal, the People do not argue that defendant's conviction for assault with force likely to produce great bodily injury against Schneider in May 1994 should count as a prior strike conviction. Instead, they contend we should construe the trial court's finding as that defendant suffered a prior conviction for assault *with a deadly weapon* against Charles Cavness in case number 153932. Such an assault *is* a serious felony. (§ 1192.7, subd. (c)(31); *Delgado*, *supra*, 43 Cal.4th at p. 1065.)

The People's argument is untenable for three reasons. First, the People did not *plead* that defendant was convicted in May 1994 of assault with a deadly weapon in case number 153932, nor did they seek to amend the information at any time. They were required by statute to plead the prior strike conviction. (§ 667, subds. (c), (e)(2); § 1170.12, subds. (a), (d); *People v. Kilborn* (1996) 41 Cal.App.4th 1325, 1332.)

Second, the People never put the matter at issue. Their information does not refer to defendant's conviction for assault with a deadly weapon as a prior strike conviction. At the hearing, the People did not argue that it was the basis for one. It is true that, as the People contend, the prosecutor submitted evidence at the bench trial which showed that defendant was convicted in 1994 for assault with a deadly weapon. However, the prosecutor never made a direct reference to that conviction. He made what may have been an oblique reference to it, as well as to defendant's simultaneous conviction for assault with force likely to cause great bodily injury, in discussing the charges relevant to the People's determinate sentencing enhancement allegations. However, he stated only that defendant had previously been convicted of a strike and non-strike offense pursuant to section 245, subdivision (a)(1). He did not identify which of defendant's two May 1994 convictions constituted a strike conviction. This was an important omission because in 1994, the crimes of assault with force likely to produce great bodily injury and assault with a deadly weapon were both contained in that same subdivision, section 245,

12

subdivision (a)(1).**[8]** (Stats. 1993, ch. 369, § 1.) Thus, the prosecutor's oblique reference was too ambiguous to clarify the People's allegations or put forward the assault with a deadly weapon conviction as the basis for the court finding a prior strike conviction.

Third, the trial court did not make any mention of, or finding regarding, defendant's conviction for assault with a deadly weapon. To the contrary, it specifically ruled that defendant's 1994 conviction for assault with force likely to produce great bodily injury constituted a prior strike conviction. As we have discussed, this was incorrect absent evidence that defendant in fact inflicted such an injury on the victim.

The People also contend that the defense understood the People were relying on defendant's conviction for assault with a deadly weapon against Charles for the second strike conviction because, shortly after the bench trial, the defense argued in its sentencing memorandum that this particular conviction should be stricken and not be a basis for a Three Strikes Law sentence. Given the evidence submitted by the prosecution at the bench trial, it is not surprising that the defense would nonetheless argue that this conviction should not be the basis for a Three Strikes Law sentence. Regardless, it is of no consequence in light of the fact that at the bench trial, the People did not argue, nor did the trial court find, that defendant's conviction for assault with a deadly weapon against Charles was the basis for his second strike.

In short, the trial court found as defendant's second strike conviction that he had previously been convicted of assault with force likely to produce great bodily injury in May 1994. The only such conviction was for defendant's assault of Schneider in case number 153902. Nothing in the record regarding that proceeding indicates that defendant's assault of Schneider included his infliction of great bodily injury upon her. In the absence of any such evidence, the People did not meet their burden of proving this

---

**[8]** Assault with a deadly weapon remains in section 245, subdivision (a)(1), but assault with force likely to produce great bodily injury is now contained in section 245, subdivision (a)(4).

13

conviction constituted a second strike.  We therefore vacate defendant's sentence and remand this matter to the trial court for further proceedings consistent with this opinion.**⁹**

In light of our conclusions, we do not address the remainder of the parties' arguments, including defendants' contention that the People did not present evidence sufficient to meet certain other elements of involuntary manslaughter.

## DISPOSITION

Defendant's conviction for involuntary manslaughter is reversed and his 25-years-to-life sentence for assault of Taylor with a deadly weapon is vacated.  This matter is remanded to the trial court for further proceedings consistent with this opinion.

 

STEWART, J.

We concur.

KLINE, P.J.

RICHMAN, J.

---

**⁹** The parties do not address what is permissible upon remand.  We make no determination regarding it.  We only note that the People generally may retry strike conviction allegations found on appeal to be unsupported by sufficient evidence without double jeopardy acting as a bar.  (*People v. Sotello* (2002) 94 Cal.App.4th 1349, 1354-1357.)